1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11  JOHN J. STRUNKS, a single man, and          CASE NO. 12-5391 RJB
    JUDY J. RIKER, a single woman,

12                          Plaintiffs,          ORDER ON MOTION FOR
                                                 SUMMARY JUDGMENT AND
13          v.                                   MOTION TO AMEND COMPLAINT

14  COUNTRY MUTUAL INSURANCE
    COMPANY,
15
                            Defendant.
16

17          This matter comes before the Court on Defendant Country Mutual Insurance Company's

18  Motion for Summary Judgment (Dkt. 41) and Plaintiffs' Motion to Amend Complaint (Dkt. 43).

19  The Court has reviewed the pleadings filed in regard to the motions, the record, and is fully

20  advised.

21          In this case against their insurance company, Plaintiffs allege that the Defendant breached

22  their insurance contract when it denied Plaintiffs' claim for the "theft" of a house when the house

23  was demolished by another.  Dkt. 30.  Defendant moves for summary judgment, arguing that the

24  demolition of the house does not constitute a "theft" under the policy, and that Plaintiffs were not

1 | timely in submitting their claim for loss.  Dkt. 43.  Plaintiffs move, for the second time, to amend

2 | their complaint to add a claim for breach of contract for denying coverage for "collapse" of the

3 | house.  Dkt. 43.  For the reasons set forth below, the Motion for Summary Judgment should be

4 | granted and the Motion to Amend Complaint denied.

5 | 

**I.        FACTS AND PROCEDURAL HISTORY**

6 | **A.  FACTS**

7 | Plaintiffs are the fee title holders of real property in Grays Harbor County, Washington,

8 | commonly known as 415 E. Kennaston, Montesano, Washington.  Dkt. 45-2, at 1.  This house

9 | and property were insured under a policy with Defendant under policy number A46K4484193.

10 | Dkt. 42-5, at 1-46.

11 | On June 3, 2009, Plaintiffs, as sellers, and Kenneth B. Hallock, as buyer, executed a

12 | "Real Estate Contract using the standard residential short form" for the property.  Dkt. 42-1, at 1-

13 | 7.  Plaintiffs financed the sale, and Mr. Hallock's payments were due on the 15th of every month.

14 | *Id.*  The Real Estate Contract was recorded in Grays Harbor County.  *Id.*   On July 31, 2009, Mr.

15 | Hallock executed a quit claim deed, conveying his interest in the property to Owm O'Laughlin.

16 | Dkt. 42-1, at 1-2.  According to Mr. O'Laughlin, Plaintiffs were present when the paperwork

17 | requiring him to take over Mr. Hallock's payments was signed.  Dkt. 42-3, at 5.  Plaintiff Judy

18 | Riker states that Mr. Hallock and Mr. O'Laughlin arrived at her office with the Quit Claim Deed

19 | already executed, but does not deny that other paperwork was signed in her presence.  Dkt. 45-2.,

20 | at 2.

21 | On August 20, 2009, building permits regarding the house were approved by the City of

22 | Montesano.  Dkt. 45-1, at 12.

23 |

24 |

1      Mr. O'Laughlin testified that at some point, he explained to Plaintiffs that he intended to

2 take the house "down to the foundation" and showed them the blue prints. Dkt. 42-3, at 3. Ms.

3 Riker states that she wasn't informed that the house would be taken down to the foundation, but

4 was told that they were planning on doing a major remodel and she and Mr. Strunks were shown

5 the plans. Dkt. 45-2, at 2. She states that she told them that they needed to provide both

6 Plaintiffs with proof of building code compliance and proof of sufficient funding to complete the

7 remodel. Dkt. 45-2, at 2.

8      At some point in 2009, Mr. O'Laughlin moved into the house. Dkt. 45-1, at 4. He lived

9 there for a year or so, and during that time, he noticed a lot of roof damage. Dkt. 45-1, at 4. He

10 hired Hanks Construction to redo a huge section of the roof. Dkt. 45-1, at 4. Mr. O'Laughlin

11 told the Plaintiffs that Hanks Construction had fixed the roof. Dkt. 45-1, at 6. Mr. O'Laughlin

12 testified that after informing Plaintiffs of his intent to tear down the house, and about the roof

13 repair, in late 2009, the roof collapsed. Dkt. 45-1, at 5. He did not tell Plaintiffs about the

14 collapse because the plan was to tear the whole house down to the foundation anyway so that he

15 could start construction in January or February of 2010. Dkt. 45-1, at 7. On November 13,

16 2009, the house was torn down, and by November 16, 2009, all the debris from the demolition

17 was hauled away. Dkt. 42-4, at 2. Mr. O'Laughlin testified that he did not inform the Plaintiffs

18 at the time the house was demolished. Dkt. 42-2, at 3.

19      Mr. O'Laughlin made payments on the Real Estate Contract until August of 2010. Dkt.

20 45-1, at 25. He then told Plaintiffs that he could no longer afford the payments, and so they

21 made an agreement for Mr. O'Laughlin to skip the principal and interest payments through

22 February of 2011. Dkt. 45-1, at 25. Mr. O'Laughlin states that he went back to the house site in

23 February of 2011, and discovered that all the lumber he had purchased to rebuild the house had

24

ORDER ON MOTION FOR SUMMARY
JUDGMENT AND MOTION TO AMEND
COMPLAINT- 3

1  been stolen.  Dkt. 45-1, at 21.  Mr. O'Laughlin states that he "just walked away" at that point.

2  Dkt. 45-1, at 19.

3        In their verified Amended Complaint, Plaintiffs state that after several months in 2011

4  without payment, they "began efforts" to contact Mr. O'Laughlin, but were unsuccessful.  Dkt.

5  30, at 2-3.  They finally visited the property on August 12, 2011, and were "shocked to find the

6  home had been completely demolished." *Id.*

7        Plaintiffs contacted Defendant on August 15, 2011, and advised it that the house had been

8  torn down.  Dkt. 30-2*., at 1.  Defendant conducted an investigation, and denied coverage on

9  September 20, 2011.  Dkt. 30-2, at 1.  It concluded that the loss here "occurred over one year

10  prior to the date [they] turned in the claim," and the loss was not for one of the policy's named

11  perils, including that of "theft." *Id*.  Plaintiffs have not reported the theft of the house to any law

12  enforcement agency.

13        **B.  PROCEDURAL HISTORY**

14        Plaintiffs filed this suit for breach of contract in Thurston County, Washington Superior

15  Court on April 10, 2012.  Dkt. 4.  The matter was removed based on diversity jurisdiction on

16  May 2, 2012.  Dkt. 1.

17        In May of 2012, Defendants filed a motion to dismiss.  Dkt. 8.  In response to

18  Defendants' motion to dismiss, Plaintiffs' filed a motion to amend their complaint.  Dkt. 19.  The

19  motion to dismiss was denied without prejudice and Plaintiffs' motion to amend was granted.

20  Dkt. 28.  Plaintiffs' Amended Complaint makes a claim for breach of contract and seeks

21  damages, attorney's fees, and costs.  Dkt. 30.

22        **C.  PENDING MOTIONS**

23

24

ORDER ON MOTION FOR SUMMARY
JUDGMENT AND MOTION TO AMEND
COMPLAINT- 4

1    Now pending is Defendant's motion for summary judgment, in which is seeks dismissal

2    of Plaintiffs' breach of contract claim arguing that no covered loss under the policy occurred.

3    Dkt. 41.  It asserts that as a matter of law, no "theft" of the house occurred because Mr.

4    O'Laughlin had a legal interest in the real property.  *Id.*  Defendant also argues that the

5    Plaintiffs' case should be dismissed because the policy requires that a claim must be made within

6    one year of an occurrence of a loss.  *Id.*  Defendant notes that demolition of the structure

7    occurred on or near November 14, 2009.  *Id.*  Plaintiffs did not report the loss until August 15,

8    2011, and so, Defendant argues, did not make a timely claim.  *Id.*

9    Plaintiffs oppose the motion and argue that when Mr. O'Laughlin demolished the house,

10   a "theft" occurred under Washington law and so Defendant's denial of their claim was a breach

11   of contract.  Dkt. 45.  Plaintiffs argue that there are issues of fact as to the notice of loss

12   provision.  *Id.*

13   After Defendant filed the instant Motion for Summary Judgment, on April 18, 2013,

14   Plaintiffs filed their second Motion to Amend Complaint.  Dkt. 43.  Plaintiffs now seek a second

15   opportunity to amend their complaint to add a claim for breach of contract for denying coverage

16   for "collapse."  *Id.*  Plaintiffs assert that Defendants would not prejudiced because their initial

17   claim was based on collapse, and recent depositions "revealed there was in fact a collapse."  *Id.*

18   Defendant opposes allowing amendment of the Complaint.  Dkt. 44.  It argues that

19   Plaintiffs seek to add theories of recovery not previously disclosed, claimed or otherwise

20   pursued.  *Id.*  It argues that the motion comes late in the litigation - after the discovery cutoff and

21   after the dispositive motions deadline.  *Id.*  It asserts further, that the claim would ultimately fail

22   due to exclusion for failure to comply with the Notice of Loss provisions of the policy.  *Id.*

23   Defendant argues that in any event, as is evidenced by Plaintiffs' own pleadings, they were

24

ORDER ON MOTION FOR SUMMARY
JUDGMENT AND MOTION TO AMEND
COMPLAINT- 5

1  aware of the facts upon which the allegations regarding the collapse are based well before the

2  original complaint was filed.  *Id.* (*citing* its September 20, 2011 letter denying Plaintiffs' claim,

3  found in the record at Dkt. 30-2, at 1).

4      This opinion will first consider Defendants' Motion for Summary Judgment (Dkt. 41)

5  and then Plaintiffs' second Motion to Amend Complaint (Dkt. 43).

## II.  DISCUSSION

### A.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1.  <u>Standard</u>

9      Summary judgment is proper only if the pleadings, the discovery and disclosure materials

10  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

11  movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

12  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

13  showing on an essential element of a claim in the case on which the nonmoving party has the

14  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

15  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

16  for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

17  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

18  metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

19  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

20  requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

21  *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

22  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

23

24

1        The determination of the existence of a material fact is often a close question.  The court

2  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

3  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, T.W. *Elect.*

4  *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

5  of the nonmoving party only when the facts specifically attested by that party contradict facts

6  specifically attested by the moving party.  The nonmoving party may not merely state that it will

7  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

8  to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

9  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

10  be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

11        2.  <u>Breach of Contract Claim</u>

12        "In Washington, insurance policies are construed as contracts."  *Weyerhaeuser Co. v.*

13  *Commercial Union Ins. Co.,* 142 Wash.2d 654, 665 (2000) (*internal citation omitted*).  The terms

14  of an insurance contract are examined to determine whether under the plain meaning of the

15  contract there is coverage.  *Kitsap County v. Allstate Ins. Co.,* 136 Wash.2d 567, 576 (1998).

16  "Insurance contracts are construed in accordance with the meaning understood by the typical

17  purchaser of the insurance."  *Sprague v. Safeco Ins. Co. of America*, 174 Wash.2d 524 (2012).

18        Although Defendant's first motion to dismiss, based on the same grounds asserted here,

19  was denied without prejudice, Defendant's motion for summary judgment (Dkt. 41) should be

20  granted.  Plaintiffs' have failed to point to evidence which would establish that there are material

21  facts in dispute as to whether a "theft" of the house occurred and whether Plaintiffs' timely made

22  their claim under the policy.

23        *a.  "Theft" of the House*

24

1    Plaintiffs have failed to show that there are issues of fact as to whether the events here

2 constituted a "theft," and so the demolition of the house was not a covered "peril" under the

3 policy.  The policy language provides that "theft" "includes attempted theft and loss of property

4 from a known place when it is likely that the property has been stolen."  Dkt. 42-5, at 28.  It

5 further provides that:

6    This peril does not include loss caused by theft:
     (1) committed by an "insured,"
7    (2) of tools, materials, and supplies for use in construction until the
     building is finished and occupied,
8    (3) from that part of a "residence premises" rented by an "insured" to
     someone other than another "insured;" or
9    (4) That occurs off the "residence premises" of (a) trailers and campers;
     (b) Watercraft. . .

10 *Id.*, at 29.  "Theft" is not otherwise defined in the policy.

11    As a starting point, exclusionary clauses such as the above are strictly construed against

12 the drafter.  *Sprague v. Safeco Ins. Co. of America*, 174 Wash.2d 524 (2012).  Using the contract

13 language, there are sufficient facts from which to conclude that there was a "loss of property

14 from a known place" when the house was demolished.  However, whether it "was likely that the

15 property has been stolen" depends on the definition of "stolen," which is not defined in the

16 policy.  In Washington, undefined terms in a contract, such as the word "stolen" here, are given

17 their "plain, ordinary, and popular" meaning.  *Kitsap County v. Allstate Ins. Co.,* 136 Wash.2d

18 567, 576 (1998).  Such meaning may be ascertained by referring to standard dictionaries.  *Id.*

19 Under Webster's Ninth New Collegiate Dictionary, "stolen" is a past tense of "steal," which is

20 defined as "to take the property of another wrongfully."

21    The first issue then, is whether Mr. O'Laughlin had a legal interest in the property such

22 that he could demolish the house or, did he "take the property of another wrongfully" when he

23 had the house torn down.  Plaintiffs do not dispute that on July 31, 2009, Mr. Hallock (the

24

1  original signatory to the real estate contract) executed a quit claim deed, conveying his interest in

2  the real property to Owm O'Laughlin, and that they were aware of such a transfer.  Dkt. 42-1, at

3  1-2.  So, to the extent that Mr. Hallock had a real property interest in the house, Mr. Hallock

4  conveyed that interest to O'Laughlin.

5       "A real estate contract is an agreement for the purchase and sale of real property in which

6  legal title to the property is retained by the seller as security for payment of the purchase price.

7  Legal title does not pass to the purchaser until the contract price is paid in full." *Tomlinson v.*

8  *Clarke,* 118 Wash.2d 498, 504 (1990).  "A contract seller's retention of title is a security device

9  functionally similar to a real estate mortgage or deed of trust." *Terry v. Born,* 24 Wash.App.

10  652, 655 (1979).  Under Washington law, purchasers under purchase and sale contracts gain

11  property interests. *Tomlinson,* at 507.  For example, a purchaser "has the right to possession of

12  the land, the right to control the land, and the right to grow and harvest crops." *Id.*  (*internal*

13  *citations omitted*).  They can contest a suit to quiet title, sue for trespass, or to enjoin construction

14  of a fence. *Id.*  (*internal citations omitted*).  A purchaser's interest "constitutes a mortgageable

15  interest," and a purchaser "is a necessary and proper party for purposes of a condemnation

16  proceeding." *Id.*  (*internal citations omitted*).

17         Washington treats the seller's interest under a real estate installment sales contract
   as a lien/mortgage-type security interest in real property. Washington does not
18         now, nor as [ sic ] has it for a long time, considered the purchaser's interest under
   a real estate installment sales contract as creating a "mere" contract right. The
19         remedies provided to the seller in the case of breach or nonperformance are those
   of a secured creditor. Washington law considers the purchaser's interest under the
20         real estate contract as a property interest and the seller's interest under that
   contract as a lien-type security device.

21

22  *Id.,* at 509 (*quoting In re McDaniel,* 89 B.R. 861 (Bankr. E. D. Wash. 1988).

23

24

1    Accordingly, as the transferree via the quit claim deed, Mr. O'Laughlin had a real

2    property interest in the house such that he could demolish/begin the "major remodel" of the

3    house in 2009.  Plaintiffs cite no authority to the contrary.

4    Plaintiffs note that starting in March of 2011, Mr. Hallock and/or Mr. O'Laughlin failed

5    to make payments under the contract.  Plaintiffs argue that they are in breach of contract, and

6    have been since March 2011.  Dkt. 45.  Plaintiffs assert that they now have title in the property.

7    They assert that the missing house was therefore "stolen" from them.  *Id.*

8    This Court makes no finding regarding who now has interests in this property or any

9    other rights under the real estate contract.  For present purposes, at the time of the demolition,

10    and for several years afterward, Mr. O'Laughlin had real property interests in the property, and

11    as sellers, Plaintiffs retained a property rights under the contract.  See *In re Freeborn,* 94

12    Wash.2d 336, 340 (1980).  Plaintiffs have not shown that there are any issues of fact as to

13    whether Mr. O'Laughlin had an interest in the property such that he could not tear the house

14    down.  Further, there is no evidence in the record that Plaintiffs instituted any proceeding to clear

15    title and so, it is unclear what interest Plaintiffs' have in the property.  In any event, Plaintiffs

16    have not shown that there are facts leading to the conclusion that they suffered a "theft" of the

17    house under the policy.  There breach of contract claim should be dismissed.

18    *b.  Timeliness of Plaintiffs' Claim*

19    The policy language further provides that "all claims under this policy must be brought

20    within one year of the date of 'occurrence.'"  Dkt. 42-5, at 33.  "Occurrence" is defined as the

21    "happening of an event, or series of events closely related in time and nature that give rise to a

22    loss."  *Id.,* at 6-7.

23

24

ORDER ON MOTION FOR SUMMARY
JUDGMENT AND MOTION TO AMEND
COMPLAINT- 10

1      It is undisputed that the demolition occurred on or near November 14, 2009, and

2 Plaintiffs did not report the loss until August 15, 2011.  Plaintiffs did not make a timely claim.

3      Plaintiffs argue that their loss did not "occur" until March 2011, when Mr. O'Laughlin and

4 Mr. Hallock failed to make their payments under the real estate contract.  Plaintiffs fail to show

5 that the purchaser's failure to make a payment under the real estate contract is a covered loss

6 under the policy.  Their claim should be dismissed on this basis as well.

7 **B.  PLAINTIFFS' SECOND MOTION TO AMENDED COMPLAINT**

8      Fed. R. Civ. P. 15(a)(2), provides that, "a party may amend its pleading only with the

9 opposing party's written consent or the court's leave. The court should freely give leave when

10 justice so requires."  A motion to amend under Rule 15(a)(2), "generally shall be denied only

11 upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party."

12 *Chudacoff v. University Medical Center of Southern Nevada,* 649 F.3d 1143, (9th Cir. 2011).

13 Rule 15(a) is designed "to facilitate decision on the merits, rather than on the pleadings or

14 technicalities."  *Id.*

15      Plaintiffs' second Motion to Amend Complaint (Dkt. 43), should be denied.  As Defendant

16 properly points out, Plaintiffs have been aware of this basis for their claim (collapse of the roof)

17 since at least September 20, 2011, and so a showing of undue delay has been made.

18 Additionally, amendment is futile.  At the very least, the evidence shows that the roof collapsed

19 before November of 2009.  The "occurrence" of the loss, therefore, was several years ago, and

20 like their claim for theft, their claim for collapse would be barred by the contractual terms as

21 having occurred over a year before it was tendered.  Further, this late in the litigation, the

22 Defendant would be unduly prejudiced by the amendment.  Discovery has been closed and the

23

24

ORDER ON MOTION FOR SUMMARY
JUDGMENT AND MOTION TO AMEND
COMPLAINT- 11

1  dispositive motions deadline has passed.  The matter is set for trial in early August.  The motion

2  for leave to amend the complaint a second time should be denied.

3                                    **III.    ORDER**

4          Accordingly, it is **ORDERED** that:

5          •   Defendant's Motion for Summary Judgment (Dkt. 41) is **GRANTED**;

6          •   Plaintiffs' Motion to Amend Complaint (Dkt. 43) is **DENIED**; and

7          •   This case is **DISMISSED**.

8          The Clerk is directed to send uncertified copies of this Order to all counsel of record and

9  to any party appearing *pro se* at said party's last known address.

10         Dated this 9th day of May, 2013.

11

12

13         ROBERT J. BRYAN
           United States District Judge

14

15

16

17

18

19

20

21

22

23

24